1  J. Edward Kerley (175695)
   Dylan L. Schaffer (153612)
2  **Kerley Schaffer LLP**
   1939 Harrison Street, Suite 900
3  Oakland, California 94612
   Telephone: (510) 379-5801
4  E-mail: dylan@kslaw.us

5  Eric D. Townsend (270279)
   **Law Eagles, PC**
6  5638 Lake Murray Boulevard, Suite 381
   La Mesa, CA 91942
7  Telephone: (858) 634-0099
   E-mail: eric@laweagles.com

8
   Attorneys for Plaintiffs
9

10              UNITED STATES DISTRICT COURT

11         FOR THE NORTHERN DISTRICT OF CALIFORNIA

12              SAN FRANCISCO DIVISION

13

14 | **KATHRYN CLARK**, and **JERED CLARK,** husband and wife, | Case No. 3:22-CV-01698-WHO

15 |                          Plaintiffs, | **NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

16 |            v. |

17 | **AMCO INSURANCE COMPANY**, an Iowa corporation, and **NATIONWIDE MUTUAL INSURANCE COMPANY,** an Ohio Corporation, and **DOES 2 through 100,** | Date: June 5, 2024
18 |  | Time: 2:00 p.m.
19 |  | Court: Hon. William H. Orrick

20 |            Defendants. |

21

22          **<u>NOTICE OF MOTION PURSUANT TO LOCAL RULE 7.2(b)(2), (3)</u>**

23      **PLEASE TAKE NOTICE THAT** on June 5, at 2:00 p.m. in the United States District

24  Court, Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San

25  Francico, California, Plaintiffs Kathryn and Jered Clark (Clarks) will move the Court pursuant to

26  Federal Rule of Civil Procedure 56 for its order granting their motion for partial summary

27  judgment as follows:

28      • Nationwide's "Undetectable Wildfire Or Brushfire Particles" exclusion and

                              1

limitation in the insurance policy (Policy) covering the Clarks' home and contents is invalid and unenforceable; and

- Nationwide was not entitled to deny the Clarks' claim on or about November 3, 2023, to the extent it relied on the application of the "Undetectable Wildfire Or Brushfire Particles" Policy exclusion because the exclusion is invalid and unenforceable.

Plaintiffs' Motion for Partial Summary Judgment

1

**TABLE OF CONTENTS**

2  POINTS AND AUTHORITIES PURSUANT TO LOCAL RULE 7.2(b)(4) .......................7

3  INTRODUCTION ...................................................................................7

4  UNDISPUTED FACTS .............................................................................8

5  SUMMARY JUDGMENT STANDARD .....................................................10

6  THE VALIDITY ISSUE IS A QUESTION OF LAW TO BE RESOLVED BY THE

7      COURT ...........................................................................................10

8  ARGUMENT ........................................................................................11

    I.    The "Undetectable Wildfire Or Brushfire Particles" Policy Exclusion

9         and Limitation is Invalid and Unenforceable .......................................11

10          A.    The Statutory and Regulatory Scheme .......................................11

11          B.    The Exclusion is Invalid and thus Unenforceable because with

                it, the Policy Fails to Provide the Statutory Minimum Coverage

12                 for "all LOSS BY FIRE." ......................................................12

13               1.    A Loss from Smoke and Fire Debris is Caused by Fire .........14

14               2.    Nationwide's "Undetectable Wildfire Or Brushfire Particles"

15                   Exclusion and Limitation is Invalid and Unenforceable .........16

16               3.    The California Superior Court's Ruling in *Marrufo v. AAA*

17                   is Persuasive Authority on the Validity Issue .......................17

18          C.    The "Undetectable Wildfire Or Brushfire Particles" Policy

                Limitation is Also Invalid and Unenforceable because it Conflicts

19                 with the Mandate of Insurance Code §2051 That Carriers Pay

20                 Actual Cash Value .............................................................18

21          D.    The "Undetectable Wildfire Or Brushfire Particles" Policy

                Exclusion and Limitation is Invalid and Unenforceable because it is

22                 Irreconcilable with Nationwide's Obligation to Thoroughly

23                 Investigate the Loss ...........................................................19

24          E.    The "Undetectable Wildfire Or Brushfire Particles" Policy

                Limitation is also Invalid because it is Not Plain, Clear, or

25                 Unmistakable ...................................................................20

26  CONCLUSION .....................................................................................22

27

28

1

<b><u>TABLE OF AUTHORITIES</u></b>

2

**<u>Cases</u>**

3

*Amer. Nat. Prop. and Cas. Co. v. Stubbs*, 512 F.Supp.3d 1132, 1134–35 (D.Nev. 2021) …..….10

4

*Baldwin v. AAA N. Cal., Nev. & Utah Ins. Exch.,* 1 Cal.App.5th 545, 549-50 (2016) ……..…10

5

6

*Bank of the West v. Super. Ct. (Industrial Indem. Co.),* 2 Cal.4th 1254, 1258 (1992) …………10

7

*Bragg-Taylor v. Neighborhood Spirit Prop. & Cas. Co.,* No. 12-7219, 2013 WL 12149711,
    at *2 (E.D. Pa. Oct. 29, 2013) ……………………………………………………...15

8

*California Fair Plan Ass'n v. Garnes,* 11 Cal.App.5th 1276, 1309 (2017) …………11, 12, 18, 19

9

10

*Century-Nat'l Ins. Co. v. Garcia,* 51 Cal.4th 564, 568 (2011) …………………………………11

11

*Collins v. Delaware Ins. Co.,* 9 Pa. Super. 576, 578-79 (Pa. Super. 1898) ……………………..15

12

*Continental Insurance Co. v. Metro–Goldwyn–Mayer, Inc.*, 107 F.3d 1344, 1346
    (9th Cir. 1997) ………………………………………………………………..…10

13

14

*Crisco v. Foremost Insurance Company Grand Rapids, Michigan;* No. C 19-07320 WHA,
    2020 WL 7122476, at *5 (N.D. Cal. Dec. 4, 2020) …………………………….....14, 15

15

*Delametter v. Home Ins. Co.,* 233 Mo.App. 645, 126 S.W.2d 262, 265 (Mo.App. 1939) …..….15

16

17

*Farmers Ins. Co. of Oregon v. Trutanich,* 123 Or.App. 6, 10–11, 858 P.2d 1332, 1335
    (1993) …………………………………………………………………………………16

18

*Fischer v. Kelly Services Global, LLC,* 2024 WL 382181, at *8 (SD CA 2024) …………….....17

19

20

*Foster v. Fid. Fire Ins. Co.,* 24 Pa. Super. 585, 587 (Pa. Super. 1904) …………………….....15

21

*Frank Palmer v. Lumber Mut. Fire Ins. Co. of Boston, Mass.,* 100 N.Y.S.2d 988
    (Sup 1950) ....................................................................................................................15

22

23

*Freed's, Inc. v. Am. Home Fire Assurance Co.,* 305 Mich. 89, 94, 8 N.W.2d 923, 925
    (1943) …………………………………………………………………………………15

24

*Frontis v. Milwaukee Ins. Co.,* 156 Conn. 492, 497, 242 A.2d 749, 752 (Super. Ct. 1968) …….15

25

*Garvey v. State Farm Fire & Cas. Co.,* 48 Cal.3d 395, 406 (1989) ……………………………17

26

*Hansen v. Lemars Mut. Ins. Ass'n,* 193 Iowa 1, 186 N.W. 468, 469 (Sup. Ct. 1922) ………..…15

27

*Haynes v. Farmers Ins. Exch.,* 32 Cal.4th 1198, 1214 (2004) …………………………….……11

28

4

---

*Hervey v. Mercury Cas. Co.,* 185 Cal.App.4th 954, 962–63 (2010) ………………………….....11

*Hobson v. Indian Harbor Ins. Co.,* 2015 WL 1069242, at *5 (Mich. Ct. App., 2015) …………16

*Howell v. State Farm Fire & Cas. Co.,* 218 Cal.App.3d 1446, 1453 (1990) ……………...…11

*Jiannetti v. Nat'l Fire Ins. Co. of Hartford, Conn.,* 277 Mass. 434, 438, 178 N.E. 640, 642
    (Sup. Jud. Ct. 1931) …………………………………………………………………………..15

*Johnson v. Hartford,* 2017 WL 2224828 (ND CA 2017) …………………………………………19

*Kim-Chee LLC v. Philadelphia Indemnity Ins. Co.,* 535 F.Supp.2d 152 (W.D. N.Y. 2021) ……17

*Largent v. State Farm Fire & Cas. Co.,* 116 Or.App. 595, 597–98, 842 P.2d 445, 446
    (1992) …………………………………………………………………………………………....16

*MacKinnon v. Truck Ins. Exchange,* 31 Cal.4th 635, 648 (2003) …………………………….....20

*Marrufo et al. v. Automobile Club of Southern California,* Los Angeles Superior Court No.
    BC597839 …………………………………………………………………………………...17, 18

*Marshall Produce Co. v. St. Paul Fire & Marine Ins. Co.,* 256 Minn. 404, 416,
    98 N.W.2d 280, 289–90 (1959) …………………………………………………………….....15

*Matzner v. Seaco Ins. Co.,* 9 Mass.L.Rptr. 41 (Mass. Super. 1998) …………………………17

*MESA Underwriters Specialty Ins. Co. v. Five Star Hotels, LLC,* No. GD-14-010490,
    2015 WL 13838469, at *6-7 (Pa. Com. Pl. Nov. 2, 2015) …………………………...…….15

*MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.,*
    187 Cal.App.4th 766, 779 (2010) ………………………………………………………..…….14

*O'Connor v. Queen Ins. Co. of Am.,* 140 Wis. 388, 122 N.W. 1038, 1040 (Sup. Ct. 1909) …….15

*Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co.,* No. 1:15-cv-01932-CL,
    2016 WL 3267247, (D. Or., June 7, 2016), No. 1:15-cv-01932-CL,
    2017 WL 1034203 (D. Or., Mar. 6, 2017) …………………………………………………...15, 16

*Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts* (D. Or., June 18, 2002,
    No. CV-01-1362-ST) 2002 WL 31495830, at *8 …………………………………………16

*Schrillo Co. v. Hartford Accident & Indem. Co.,* 181 Cal.App.3d 766, 776 (1986) ………….....10

*State Farm Mut. Auto. Ins. Co. v. Jacober,* 10 Cal.3d 193, 201-202 (1973) ……………………20

*Throgs Neck Bagels, Inc. v. GA Ins. Co. of New York,* 241 A.D.2d 66, 70,
    671 N.Y.S.2d 66, 69 (N.Y. App. Div. 1998) …………………………………………………....15

5

*Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (1995) …………………………………………10

*Watts v. Farmers Ins. Exch.*, 98 Cal.App.4th 1246, 1260 (2002) …………………………………11

*Yale Univ. v. Cigna Ins. Co.*, 224 F. Supp. 2d 402, 413 (D. Conn. 2002) ………………………16

**Statutes**

Ins. Code §2051 ………………………………………………………...………12, 18, 19

Ins. Code §2070 …………………………………………………...………...………11, 12, 13, 16, 17, 19

Ins. Code §2071 …………………………………………………7, 11, 12, 13, 16, 17, 18, 19

Ins. Code §2083 ………………………………………………………………………………..8

**Regulations**

10 CCR §2695.7(d) ……………………………………………….…………12, 19

10 CCR §2695.9(d) ………………………………………………….………...12, 18, 19

**Treatises**

10A <u>Couch on Insurance</u>. (Third Edition), §§149:34, 149:36 …………………………………..16

**Other Authorities**

California Practice Guide, Insurance Litigation, ¶4:450 ………………………………………..20

University of South Carolina, The Fire Triangle,
https://www.sc.edu/ehs/training/Fire/01_triangle.htm ..................................................................13

Plaintiffs' Motion for Partial Summary Judgment

1

## POINTS AND AUTHORITIES PURSUANT TO LOCAL RULE 7.2(b)(4)

2

### INTRODUCTION

3
4
5
6
7
8
9
10

The Clark family—a nurse manager, construction foreman, and their four children aged 5 to 9—live in Windsor, California. Their home was damaged by a wildfire commonly known as the Kincaid Fire, which began on October 23, 2019, burned for more than two weeks, and consumed nearly four hundred structures and an untold number of vehicles and other property. The Clarks' home survived but suffered damage due to intense penetration of smoke and debris into the interior which resulted in contamination and damage to building components such as insulation and ducting, and personal property such as furniture and carpets. Their home and personal property were insured by Nationwide Mutual Insurance Company (Nationwide).

11
12
13

In March of 2023 the Clarks submitted a claim for damage to the home and contents for nearly $700,000. Nationwide denied the claim in its entirety, relying in part on an endorsement to the Clarks' Nationwide policy (Policy).

14
15
16
17
18
19

The endorsement is an addition to the Policy's "Exclusions" section. In the case of what Nationwide describes as a "wildfire or brushfire event," the carrier disclaims any obligation to pay costs relating to testing, and repair/replacement, of real or personal property damaged by debris residues "undetectable by unaided human senses...." Nationwide defines "undetectable" as requiring detection by means of "special equipment, including but not limited to, microscopes or laboratory testing."

20
21

This motion seeks the Court's ruling that the provision is invalid and unenforceable, and that Nationwide was not entitled to rely on the endorsement to deny the Clarks' claim.

22
23
24
25
26

In California, the extent of coverage afforded by fire insurance policies is strictly controlled by statute. The mandatory scope of fire policies in this State is broad: carriers are required to afford coverage for "all LOSS BY FIRE" to the insured property.[1] The mandate means carriers are precluded from excluding, restricting, or limiting coverage for losses caused by fire. Indeed, any insurer that sells a policy with less than the mandatory minimum coverage

27
28

---

[1] Ins. Code §2071 (capitalization in original).

for fire is guilty of a misdemeanor.[2]

But Nationwide's endorsement is precisely such an improper limitation. Having carved out a category of damage to houses and contents admittedly caused by *fire*—namely, "Undetectable Wildfire or Brushfire Damage"—Nationwide refuses to pay for investigation and repair/replacement of such damage. The limitation is invalid and unenforceable as a matter of law because Nationwide's coverage for damage caused by *fire* falls short of the mandatory minimum coverage required by California law. It follows that Nationwide was not entitled to rely on the provision to deny the Clarks' claim because provisions that conflict with statutes are not enforceable contract terms.

Pursuant to Local Rule 7.4(a)(3), the issues to be decided are:

(a) *Is Nationwide's "Undetectable Wildfire Or Brushfire Particles" Policy exclusion and limitation invalid and unenforceable because it reduces coverage for damage caused by fire to less than the mandatory minimum required in California? The answer is yes.*

(b) *Could Nationwide validly rely on the "Undetectable Wildfire Or Brushfire Particles" Policy exclusion to deny the Clarks' claim. The answer is no.*

The issues presented are matters of law for the Court's decision on undisputed facts. The Court should grant partial summary judgment in favor of the Clarks.

## UNDISPUTED FACTS[3]

In October 2019, the Clarks home and personal property at 9168 Piccadilly Circle, Windsor, California, were insured by Nationwide.[4] The Policy itself contains no reference to any limitation or exclusion for damage caused by wildfire.[5] An endorsement (H 01 00 CA 0719)

---

[2] Ins. Code §2083.

[3] Plaintiffs' evidence is authenticated by and attached to the accompanying Declaration of Dylan Schaffer in Support of Plaintiffs' Motion for Summary Judgment (Schaffer Decl.).

[4] Schaffer Decl., Exhibit A (Policy Declarations).

[5] Schaffer Decl., Exhibit B (Policy).

described as "Special Provisions – California,"[6] provides as follows:[7]

**SECTION I - EXCLUSIONS**

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area…. The following exclusion is added:

**14. Undetectable Wildfire Or Brushfire Particles.**
This means:
a. Any type of smoke, soot, char, ash, particles, matter, material, other byproducts or debris, or odor that is produced, emitted or released during or directly resulting from or following a wildfire or brushfire event that is undetectable by unaided human senses. Unaided human senses means without requiring special equipment, including, but not limited to, microscopes or laboratory testing.

b. This exclusion applies to costs to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, deodorize, or any way respond to or assess the effect of Undetectable Wildfire Or Brushfire Particles. It also applies to costs to neutralize or deodorize odor unless odor is detectable on your "residence premises" more than 30 days following the declaration of full containment of the wildfire or brushfire by a governmental authority.

Following the Kincaid Fire, the Clarks notified Nationwide of their loss (Claim Number 777179-GJ).[8] Nationwide responded with a reservation of rights letter, informing the Clarks that a portion of their claim might be denied in reliance on the "Undetectable Wildfire Or Brushfire Particles" Policy endorsement.[9]

---

[6] Schaffer Decl., Exhibit C, p.2 (California Endorsement).

[7] Schaffer Decl., Exhibit B, p.22 and Exhibit C, p.2.

[8] Schaffer Decl., Exhibit D, p.1 (Reservation of Rights Letter).

[9] Schaffer Decl., Exhibit D. pp.3-4

1    On March 30, 2023, the Clarks submitted their detailed claim for damage to their home

2    and contents caused by the fire in the amount of $695,763.27.[10] Relying in part on its

3    "Undetectable Wildfire Or Brushfire Particles" Policy limitation, Nationwide denied the claim

4    on November 3, 2023.[11]

### SUMMARY JUDGMENT STANDARD

6    "Summary judgment is proper when the record shows that there is no genuine dispute as

7    to any material fact and the movant is entitled to a judgment as a matter of law.... When the

8    moving party bears the burden of proof on a claim or defense, it must produce evidence which

9    would entitle it to a directed verdict if the evidence went uncontroverted at trial.... If the moving

10    party satisfies its initial burden, the burden then shifts to the party opposing summary judgment

11    to establish a genuine issue of material fact."[12] "[W]hen the nonmoving party bears the burden of

12    proof on a claim or defense, the moving party must … show that the nonmoving party does not

13    have enough evidence of an essential element to carry its ultimate burden of [proof] at trial."[13]

### THE VALIDITY ISSUE IS A QUESTION OF
### LAW TO BE RESOLVED BY THE COURT

16    As jurisdiction in this case is based upon diversity, interpretation of the policy is

17    governed by California law.[14] Insurance policies are contracts subject to the rules of construction

18    governing contracts.[15] "[I]nterpretation of an insurance policy is a question of law."[16] California

19    courts routinely hold that that provisions of property insurance policies relied on by carriers to

---

[10] Schaffer Decl., Exhibit E (Proof of Loss - supporting attachments omitted).

[11] Schaffer Decl., Exhibit F, pp.1-3 (Denial Letter).

[12] *Amer. Nat. Prop. and Cas. Co. v. Stubbs*, 512 F.Supp.3d 1132, 1134–35 (D.Nev. 2021).

[13] *Id.* at 1135.

[14] *Continental Insurance Co. v. Metro–Goldwyn–Mayer, Inc.*, 107 F.3d 1344, 1346 (9th Cir. 1997).

[15] *Bank of the West v. Super. Ct.* (*Industrial Indem. Co.*), 2 Cal.4th 1254, 1258 (1992).

[16] *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (1995); *Baldwin v. AAA N. Cal., Nev. & Utah Ins. Exch.*, 1 Cal.App.5th 545, 549-50 (2016); *Schrillo Co. v. Hartford Accident & Indem. Co.*, 181 Cal.App.3d 766, 776 (1986).

1   deny or limit claims are invalid and unenforceable if they conflict with statutory mandates.[17]

2           Indeed, because property insurance is an adhesion contract, and because of the quasi-

3   fiduciary role carriers play, courts have a special duty to ensure the terms of contracts satisfy

4   statutory mandates and minimums. As the *Garnes* court articulated, "courts have long held that

5   an insurer has the right to limit policy coverage in plain and understandable language and ... may

6   limit the nature of the risk it undertakes to assume .... Nevertheless, an insurance company's

7   limitation of coverage must conform to the law and public policy .... Furthermore, it is also well

8   settled that insurance contracts, as contracts of adhesion, are subject to careful judicial scrutiny to

9   avoid injury to the public .... Courts considering adhesion contracts have a heightened

10  responsibility to prevent the marketing of policies that provide unrealistic and inadequate

11  coverage."[18]

12                                    **ARGUMENT**

13  **I.    The "Undetectable Wildfire Or Brushfire Particles" Policy Exclusion and**

14      **Limitation is Invalid and Unenforceable.**

15      **A.    The Statutory and Regulatory Scheme.**

16  Insurance Code §2071, California's standard fire policy, affords broad coverage for the

---

[17] *Century-Nat'l Ins. Co. v. Garcia*, 51 Cal.4th 564, 568 (2011) [Supreme Court decides as a matter of law that insurance policy provision barring intentional loss claims by innocent co-insureds is invalid and unenforceable as conflicting with Insurance Code §§2070 and 2071]; *Watts v. Farmers Ins. Exch.*, 98 Cal.App.4th 1246, 1260 (2002) [court decides application of fraud exclusion to innocent co-insured is invalid and unenforceable as conflicting with Insurance Code §§2070 and 2071]; *California Fair Plan Ass'n v. Garnes*, 11 Cal.App.5th 1276, 1309 (2017) [court decides as a matter of law that policy provision limiting payment of claims to the appraised value of a property is invalid and unenforceable as conflicting with Insurance Code §§2070 and 2071]; *Howell v. State Farm Fire & Cas. Co.*, 218 Cal.App.3d 1446, 1453 (1990) ["policy exclusions at issue in this case are not enforceable to the extent they conflict with California law"; causation provision in policy that conflicts with California statute and law is invalid and unenforceable]; *Haynes v. Farmers Ins. Exch.*, 32 Cal.4th 1198, 1214 (2004) [Supreme Court finds policy invalid and unenforceable as a matter of law due to failure to state terms plainly and conspicuously]; *Hervey v. Mercury Cas. Co.*, 185 Cal.App.4th 954, 962–63 (2010) [validity and enforceability of contract is a matter of law for the court].

[18] *Garnes,* 11 Cal.App.5th at 1305.

peril of *fire*, namely: "all LOSS BY FIRE … to the property …."[19] Insurance Code §2070 mandates that insurers deliver that minimum, allowing two options: carriers may use the standard policy form printed in §2071, or they may provide "coverage with respect to the peril of fire, when viewed in its entirety, [that] is *substantially equivalent to or more favorable to the insured than*" what appears in §2071. Courts have held carriers to the coverage minimums articulated by §§2070 and 2071.[20]

In addition, pursuant to Insurance Code §§2070 and 2071, carriers are required to afford benefits for fire losses at least to the extent of the "actual cash value" (ACV) of the loss.[21] The Clarks' Policy afforded such coverage.[22] The Legislature has set the mandatory measure of ACV under Insurance Code §2051 as follows: "the amount it would cost the insured to repair, rebuild, or replace the thing lost or injured less a fair and reasonable deduction for physical depreciation based upon its condition at the time of the injury or the policy limit, whichever is less."

Finally, the California Department of Insurance has promulgated a series of regulations that apply to the investigation and adjusting of property claims. They apply here. Specifically:

- 10 CCR §2695.7(d) requires that upon notification of a loss, "Every insurer shall conduct and diligently pursue a thorough, fair and objective investigation …"; and

- 10 CCR §2695.9(d) requires that any "estimate prepared by or for the insurer shall be in accordance with applicable policy provisions, of an amount which will restore the damaged property to no less than its condition prior to the loss …."

**B.    The Exclusion is Invalid and thus Unenforceable because with it, the Policy Fails to Provide the Statutory Minimum Coverage for "all LOSS BY FIRE."**

The Clarks' Nationwide Policy provides "all risk" coverage for "direct physical loss to

---

[19] *Garnes,* 11 Cal.App.5th at 1283  [pursuant to §2070, fire policies must provide as much coverage as set forth in §2071]. The capitalization in the phrase "all LOSS BY FIRE" is in the statute.

[20] *Id.*

[21] Ins. Code § 2071 [standard form affords coverage for loss "to the extent of the actual cash value of the property at the time of loss …."

[22] Schaffer Decl., Exhibit B, p.25 of 42.

property," including the dwelling and other structures; it therefore affords coverage for a *fire*

loss.[23] For personal property, the Policy affords coverage on a "named peril" basis for "direct

physical loss to the property caused by … Fire or Lightening".[24]

The word *fire* (like the words "*sky*" and "*mayonnaise*") is a useful way of describing an

amalgam of material components and other phenomena. *Fire* is heat, oxygen, and *fuel*.[25] For

more than a century courts around the United States have held that although the Clarks' home

did not burn or melt, the *damage* to their home and personal property was caused by *fire.* More

concretely, the loss resulted from imperfectly combusted *fuel* that is an essential component of

*fire—i.e.,* the incinerated remnants of the Clarks' neighbors' televisions, cars, kitchen flooring,

trees, half-eaten pizzas, and paint cans, which found their way into the Clarks' home and were

absorbed into their insulation, ducting, unsealed framing, carpeting, and mattresses.

Thus, as the Policy covers losses to the dwelling and contents caused by *fire*, Nationwide

was obligated pursuant to Insurance Code §§2070 and 2071 to afford coverage minimally for

"*all LOSS BY FIRE"* to the Clarks' home and personal property.

Instead, the "Undetectable Wildfire Or Brushfire Particles" endorsement restricts

coverage for damage to both the home and the personal property by exempting Nationwide from

two types of liabilities: (a) claim investigative costs associated with assessment and testing, and

(b) benefits for remediation, repair, or replacement.

Both limitations seek to carve a sub-class of damage out of the broad coverage for "all

LOSS BY FIRE" mandated by the statute, namely, damage caused by "smoke, soot, char, ash,

particles, matter, material, other byproducts or debris, or odor that is produced, emitted or

released during or directly resulting from or following a wildfire or brushfire" that is

"undetectable by unaided human senses." Nationwide explains that by "Unaided human senses"

it means the damage must be detectable "without requiring special equipment, including, but not

---

[23] Schaffer Decl., Exhibit A, p.16 of 42.

[24] Schaffer Decl., Exhibit A, p.18of 42.

[25] https://www.sc.edu/ehs/training/Fire/01_triangle.htm [describing the so-called fire triangle].

limited to, microscopes or laboratory testing."

Under no plausible construction can Nationwide's exclusion be reconciled with its statutory obligation to afford coverage for "all LOSS BY FIRE" to the Clarks' home and contents.

### 1.    A Loss from Smoke and Fire Debris is Caused by *Fire*.

The Clarks' policy covers *direct physical loss* caused by the peril of *fire*. In California, the *direct physical loss* "threshold is met when an item of tangible property has been physically altered by perils such as fire or water.... That the loss needs to be physical, given the ordinary meaning of the term, is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property. A direct physical loss contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so."[26]

No court in any jurisdiction, at any time in the published record, has held that a direct physical loss *caused by fire* is limited to *thermal damage,* meaning burning or melting. Nationwide will have no such case in its opposition. The cases to the contrary are legion.

In *Crisco v. Foremost Insurance Company Grand Rapids, Michigan*,[27] for example, the 2017 Tubbs (Sonoma) wildfire destroyed utility services at a mobile home park. The insurer argued there was no direct physical loss as the homes did not burn. The district court disagreed, relying on *MRI Healthcare*: "the fire caused a 'distinct, demonstrable, physical alteration' to the insured dwellings.... Plaintiffs' homes were destroyed just as suddenly, just as directly, and just as accidentally as those immediately burned by the fire, for the fire destroyed the viability of the

---

[26] *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.*, 187 Cal.App.4th 766, 779 (2010) (internal quotation marks and citations omitted).

[27] No. C 19-07320 WHA, 2020 WL 7122476, at *5 (N.D. Cal. Dec. 4, 2020).

entire park."[28]

Consistent with *Crisco,* 125 years of unbroken law and commentary hold that smoke and fire debris is (a) a *direct physical loss* to the property, and (b) caused *by fire.*[29] No case or commentator has held or suggested that such damage is *not a direct physical loss.* So it is unsurprising that no case has held that an insurer may, as Nationwide has done, carve out damage caused by debris and residue left behind by a wildfire, to exempt itself from investigating the scope of such damage, or payment for repairs of such losses.

Here is the same point from a Court during WWII: "WHATEVER MAY BE HELD TO BE THE MEANING of the word 'fire' in any case before the court, losses by fire will cover every loss, damage, or injury to the insured property of which 'fire' is the proximate cause. It includes every loss necessarily following from the occurrence of a fire. * * * *The fire may not extend to the particular articles insured; they may be . . . damaged by smoke*."[30]

---

[28] *Ibid*.

[29] *See Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 1:15-cv-01932-CL, 2016 WL 3267247, at *6 (D. Or., June 7, 2016), No. 1:15-cv-01932-CL, 2017 WL 1034203 (D. Or., Mar. 6, 2017) *vacated* (damage caused by smoke and residue from a hostile fire is direct physical loss or damage); *MESA Underwriters Specialty Ins. Co. v. Five Star Hotels, LLC*, No. GD-14-010490, 2015 WL 13838469, at *6-7 (Pa. Com. Pl. Nov. 2, 2015) (smoke damage is caused by fire); *Bragg-Taylor v. Neighborhood Spirit Prop. & Cas. Co.*, No. 12-7219, 2013 WL 12149711, at *2 (E.D. Pa. Oct. 29, 2013) (smoke damage is a physical loss to the property caused by fire); *Throgs Neck Bagels, Inc. v. GA Ins. Co. of New York*, 241 A.D.2d 66, 70, 671 N.Y.S.2d 66, 69 (N.Y. App. Div. 1998) (fire caused loss from smoke damage); *Frontis v. Milwaukee Ins. Co.,* 156 Conn. 492, 497, 242 A.2d 749, 752 (Super. Ct. 1968) (fire is cause of loss, "though it … never extends to [premises] in the form of combustion."); *Marshall Produce Co. v. St. Paul Fire & Marine Ins. Co.*, 256 Minn. 404, 416, 98 N.W.2d 280, 289–90 (1959) (fire need not have burned the insured property); *Frank Palmer v. Lumber Mut. Fire Ins. Co. of Boston, Mass.*, 100 N.Y.S.2d 988 (Sup 1950) (same); *Delametter v. Home Ins. Co.*, 233 Mo.App. 645, 126 S.W.2d 262, 265 (Mo.App. 1939) (cause of loss by fire not limited to losses where the property is actually consumed by fire); *Jiannetti v. Nat'l Fire Ins. Co. of Hartford, Conn.*, 277 Mass. 434, 438, 178 N.E. 640, 642 (Sup. Jud. Ct. 1931) (cause of the smoke damage was fire); *Hansen v. Lemars Mut. Fire Ins. Ass'n*, 193 Iowa 1, 186 N.W. 468, 469 (Sup. Ct. 1922) (smoke damage is a direct physical loss caused by fire); *O'Connor v. Queen Ins. Co. of Am.*, 140 Wis. 388, 122 N.W. 1038, 1040 (Sup. Ct. 1909) (same); *Foster v. Fid. Fire Ins. Co.*, 24 Pa. Super. 585, 587 (Pa. Super. 1904) (same); *Collins v. Delaware Ins. Co.*, 9 Pa. Super. 576, 578-79 (Pa. Super. 1898) (same).

[30] *Freed's, Inc. v. Am. Home Fire Assurance Co.,* 305 Mich. 89, 94, 8 N.W.2d 923, 925 (1943).

---

The accumulated weight of the cases and the commentary is articulated by a leading secondary source, <u>Couch on Insurance</u>: "all losses are covered which are directly, proximately, or immediately caused by a fire or combustion…. [S]moke and soot damage from a hostile fire *is part of the fire loss within the coverage of the policy*."[31] Or, as one judge put it, laconically: "Where there is fire, there is smoke."[32]

Damage by fire debris and residue resulting from exposure to wildfire smoke is direct physical loss caused *by fire.* Nationwide was therefore obligated pursuant to Insurance Code §§2070 and 2071 to afford coverage for "all LOSS" to the Clarks' home and its contents. Nationwide's reliance on its "Undetectable Wildfire Or Brushfire Particles" Policy exclusion renders its *fire* coverage decisively short of the mandatory minimum in California.

### 2.    Nationwide's "Undetectable Wildfire Or Brushfire Particles" Exclusion and Limitation is Invalid and Unenforceable.

Nationwide's exclusion for costs related to damage "undetectable by unaided human senses" that results from wildfires employs a *perceptibility* precondition to Nationwide's obligation to test for, and to pay benefits to repair/replace, damage to real and personal property caused by *fire,* in this case, fire debris and residue. Courts long have held that compensable "physical damage can occur at the molecular level and can be undetectable in a cursory inspection."[33] Likewise, courts hold as a matter of routine that damage from contamination and corrosion, for instance, is compensable direct physical damage.[34] Damage to dwellings and

---

[31] 10A <u>Couch on Ins</u>. (Third Edition), §§149:34, 149:36 (emphasis added); *see also* 10A <u>Couch on Ins</u>. §149:36 ("there is considerable authority that smoke and soot damage from a hostile fire is part of the fire loss within the coverage of the policy.")

[32] *Hobson v. Indian Harbor Ins. Co.*, 2015 WL 1069242, at *5 (Mich. Ct. App., 2015).

[33] *Oregon Shakespeare Festival Ass'n*, 2016 WL 3267247, at *7–9 ("property can sustain physical loss or damage without experiencing structural alteration.")

[34] *Farmers Ins. Co. of Oregon v. Trutanich,* 123 Or.App. 6, 10–11, 858 P.2d 1332, 1335 (1993) (remediation of odor is the result of a "direct physical loss"); *Largent v. State Farm Fire & Cas. Co.,* 116 Or.App. 595, 597–98, 842 P.2d 445, 446 (1992) (chemical contamination to porous materials is a covered direct physical loss); *Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts* (D. Or., June 18, 2002, No. CV-01-1362-ST) 2002 WL 31495830, at *8 (same); *Yale Univ. v. Cigna Ins. Co.*, 224 F. Supp. 2d 402, 413 (D. Conn. 2002) (same).

contents undoubtedly have material existence even if the damage may not be perceptible to the human senses.[35] Thus, as the exclusion at issue here results in coverage short of coverage for "*all LOSS BY FIRE*", the Policy is invalid under Insurance Code §§2070 and 2071.

### 3.    The California Superior Court's Ruling in *Marrufo v. AAA* is Persuasive Authority on the Validity Issue.

To date no California appellate court has addressed the validity of the sort of exclusion at issue here. But in 2018 the Los Angeles Superior Court issued an order in a dispute much like this one that this Court may find persuasive.

In *Marrufo et al. v. Automobile Club of Southern California,* Los Angeles Superior Court No. BC597839, the carrier employed a $5,000 sub-limit for wildfire smoke damage claims. Its policyholders sued. The superior court granted summary judgment, finding the wildfire smoke damage sub-limit invalid.[36]

After observing that Insurance Code §2070 requires that insurers provide at least as much coverage "with respect to the peril of *fire*" as is set forth in §2071, the Court articulated the question to be decided: "*Is smoke from a wildfire a 'peril' separate from the fire itself? Or, put another way, when an insurer is required to cover 'all loss by fire' does the term 'all' include smoke from a fire causing loss?*"[37]

The court's analysis is instructive: "Wildfire smoke is not an active force on its own. *It occurs because of the wildfire.* It thus appears from the language of the statutes and the ordinary definition of 'peril' that *when a carrier is required by the Legislature to insure against 'all' loss 'by fire' that included is the requirement to cover damage from smoke caused by any accidental*

---

[35] *Matzner v. Seaco Ins. Co.,* 9 Mass.L.Rptr. 41 (Mass. Super. 1998) [contamination by carbon monoxide, an invisible, odorless gas]; Kim-Chee LLC v. Philadelphia Indemnity Ins. Co., 535 F.Supp.2d 152 (W.D. N.Y. 2021) ["contamination of a structure that seriously impairs or destroys its function may qualify as direct physical loss."]

[36] The order is attached as Exhibit 1 to the motion. A request for judicial notice is unnecessary. To the extent the Court finds the order persuasive, it may consider it. *See Fischer v. Kelly Services Global, LLC,* 2024 WL 382181, at *8 (SD CA 2024).

[37] Schaffer Decl., Exhibit G, *Marrufo,* p.8, citing *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal.3d 395, 406 (1989).

*fire . . . ."*[38] AAA thus had insured for less than the coverage mandated by the Legislature, that is, for "all LOSS BY FIRE."[39]

Here, rather than applying a sub-limit, Nationwide has entirely disclaimed liability for a class of fire damage, absolving itself of both the costs to test for such damage and to pay for repairs. If, as the *Marrufo* court held, carriers are barred from *limiting* their liability for costs relating to smoke damage claims by employing *sub-limits* to such claims, then logically under the same statutory scheme carriers may not employ *exclusions* to avoid such liabilities entirely.

### C.    The "Undetectable Wildfire Or Brushfire Particles" Policy Limitation is Also Invalid and Unenforceable because it Conflicts with the Mandate of Insurance Code §2051 That Carriers Pay Actual Cash Value.

Under Nationwide's Policy and Insurance Code §§2051 and 2071 the Clarks were entitled at a minimum to payment of benefits for the ACV (actual cash value) of their loss, *i.e.*, the amount it would cost the Clarks to restore their property to its pre-loss condition.[40]

The Clarks' Nationwide Policy contains standard exclusions exempting the carrier as relates to losses caused, for example, by earth movement, sewer backups, or neglect by the insured.[41] If a loss is caused by one of those perils, Nationwide owes nothing. But while the "Undetectable Wildfire Or Brushfire Particles" provision is identified as an "exclusion," it acts more like a *limitation on Nationwide's loss settlement obligation*. In other words, rather than identifying a *peril* excluded from its "all risk" coverage, the exclusion at issue here absolves Nationwide from paying investigative and repair costs for a class of damage caused by a covered peril, namely fire.

A similar dispute arose in the *Garnes* case. There the insured had a policy with limits of nearly $500,000. She had a fire which resulted in damage near the policy limits. The policy treated houses like cars, providing that in the case of a "total loss"—meaning a loss above the

---

[38] Schaffer Decl., Exhibit G, *Marrufo,* p.9 (emphasis added).

[39] Schaffer Decl., Exhibit G, *Marrufo,* pp.11-12.

[40] Insurance Code §2051; 10 CCR §2695.9(d).

[41] Schaffer Decl., Exhibit B, pp.23-24.

fair market value of the home—the carrier's limit of liability was the fair market value, not the stated policy limit. The Court of Appeal found the loss settlement approach unlawful because (a) pursuant to Insurance Code §§2070 and 2071, the insurer was required to afford at least coverage for the ACV of the loss, and (b) pursuant to Insurance Code §2051, ACV means the amount it would cost the insured to make repairs, not the market value.[42]

The amount it would cost the Clarks' to restore their home and contents to their pre-loss condition—free of wildfire debris and residue—includes the cost to test for, and repair, all damage to their home and personal property resulting from the wildfire. Thus, given the statutory and regulatory mandates, Nationwide can no more disclaim its obligation to pay to find and repair/replace what it calls "Undetectable Wildfire Or Brushfire Particles" than it can refuse to pay for a burned couch, or to repair melted roof shingles.

The damage Nationwide's endorsement excludes is the result of *fire,* and plainly falls within the accepted definition of *direct physical loss* in California. Under the authorities set forth, such an "undetectable" loss—meaning undetectable by reliance solely on the human senses—unquestionably amounts to a compensable physical loss. Nationwide's obligation is to pay for investigation and repair. The exclusion is therefore invalid as it conflicts with Insurance Code § 2051 and 10 CCR §2695.9(d).

**D.    The "Undetectable Wildfire Or Brushfire Particles" Policy Exclusion and Limitation is Invalid and Unenforceable because it is Irreconcilable with Nationwide's Obligation to Thoroughly Investigate the Loss.**

Under the California Fair Claims Regulations, upon notification of a loss, Nationwide had the sole responsibility to conduct a thorough investigation of the scope of damage and determine a quantum of benefits to restore the home and contents to their pre-loss condition.[43] As should be plain from the face of Nationwide's "Undetectable Wildfire Or Brushfire Particles"

---

[42] *Garnes,* 11 Cal.App.5th at 1287 et seq. *see also Johnson v. Hartford*, 2017 WL 2224828 (ND CA 2017) [this Court held that insurer depreciation practices potentially unlawful as conflicting with the definition of actual cash value in Insurance Code §2051.

[43] 10 CCR §2695.7(d).

Policy provision, one of the provision's purposes was to relieve Nationwide of its obligation to pay for the full *investigation* of wildfire losses.

After defining the category of loss the Policy excludes—wildfire damage not perceptible to the unaided human senses—the Policy makes clear the limitation applies to "costs to test for, ... or any way respond to or assess the effect" of such damage. Put bluntly, Nationwide does not want to pay licensed professionals to competently investigate wildfire losses.

But as set forth, the excluded category of damage is *compensable physical loss* resulting from a covered peril. Nationwide has no more right to exempt itself from testing and/or assessing such damage than it has to disclaim its obligation to investigate and pay for the burned mattress or melted roof shingles. Its obligation under California law was to conduct a thorough and objective investigation of the Clarks' fire loss, to uncover *all* compensable damage, and to determine the amount it will cost the Clarks to restore the property (dwelling and contents) to their pre-loss condition. The provision is invalid and unenforceable because it is irreconcilable with Nationwide's duty of investigation under the Fair Claims Regulations.

**E.    The "Undetectable Wildfire Or Brushfire Particles" Policy Limitation is also Invalid because it is Not Plain, Clear, or Unmistakable.**

The exclusion also fails to satisfy the requirement that it be stated in a plain, clear, and unmistakable manner.[44] "The rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for a claim purportedly excluded."[45] Neither Nationwide nor its customers can predict with any certainty *what* it excludes, except to say that if the Clarks' experience is any evidence, the provision broadly empowers Nationwide in its discretion to refuse to pay to investigate and pay for repairs of fire losses.

The provision excludes "smoke, soot, char, ash, particles, matter, material, other byproduct or debris, or odor that is produced, emitted or released during or directly resulting

---

[44] *State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal.3d 193, 201-202 (1973); California Practice Guide, Insurance Litigation, ¶4:450, citing cases.

[45] *MacKinnon*, 31 Cal.4th 635, 648 (2003).

1    from or following a wildfire or brushfire event that is *undetectable by unaided human senses.*"

2    To start, what is a *wildfire or brushfire event*? The Policy is silent. The exclusion is not

3    limited to declared emergencies. Rather, the exclusion seems to apply broadly to any fire that

4    involves trees or brush. That means if a Nationwide customer's shed catches fire, the fire

5    involves the yard, and fire debris impacts the house, the exclusion may apply. Or does

6    Nationwide intend some other, narrower application? If the fire starts in brush but burns

7    commercial and residential properties which result in the absorption of manmade contaminants

8    into an insureds home, is the damaged due to an excluded *brushfire*?

9    Moreover, *which humans* does Nationwide mean when it excludes damage that is

10   undetectable by *human senses*? It cannot be a subject of serious debate that human senses vary,

11   including among genders, ages, and lifestyles. A man who has smoked three packs of cigarettes

12   per day for 30 years will likely have a somewhat different perception of the impact of wildfire

13   debris and residue on a home than, say, a nine-year old girl. Same goes for an insurance adjuster

14   on his twentieth visit in three weeks to a fire damaged property. Or does Nationwide intend to

15   accept the perceptions of its customers to determine the scope of fire coverage?

16   And by "unaided human senses" does the Policy intend to exclude coverage for damage

17   that *may be* visible, but only after removal of building components? For example, damage to

18   insulation or HVAC ducting is easily *observable* by unaided human eyes, but only after

19   accessing wall cavities or dissembling HVAC components. Given how the provision is framed,

20   can a customer know whether such damage is covered?

21   Finally, the exclusion hints at an *objective inquiry* but, confusingly, disclaims the

22   significance of *testing*, which ought to be at least *relevant,* if not controlling, as to the "objective

23   inquiry" into whether property has suffered damage caused by fire debris and residues.

24   The provision is invalid and enforceable because it does not approach the sort of clarity

25   and unmistakability that is required for enforcement of exclusions in all risk policies.

26   ///

27   ///

28   ///

**CONCLUSION**

For the reasons set forth, the Court should grant partial summary judgment in favor of the Clarks.

Date: April 26, 2024                    Kerley Schaffer LLP


                                        /S/ Dylan L. Schaffer
                                        _____
                                        Dylan L.  Schaffer
                                        Attorneys for Plaintiffs

Date: April 26, 2024                    Law Eagles, PC


                                        /S/ Eric D. Townsend
                                        _____
                                        Eric Townsend
                                        Attorneys for Plaintiffs

Plaintiffs' Motion for Partial Summary Judgment