UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN CLARK, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>AMCO INSURANCE COMPANY, et al.,<br><br>　　　　　Defendants. | Case No. 22-cv-01698-WHO<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 45 |

Kathryn and Jered Clark (the "Clarks" or "plaintiffs") assert claims in this lawsuit for breach of contract and breach of covenant of good faith and fair dealing against their insurer, Nationwide Mutual Insurance Company ("Nationwide" or "defendant"), regarding the denial of a supplemental claim for damage to their home.[1] They now move for partial summary judgment declaring that the "Undetectable Wildfire or Brushfire Particles" exclusion ("Exclusion 14") in their policy is invalid and unenforceable and that Nationwide was not entitled to rely on it when making a coverage determination. Because there are disputes of fact concerning whether Nationwide relied on the allegedly unlawful exclusion, the Clarks cannot obtain summary judgment; a decision on the legality of the exclusion and Nationwide's entitlement to reliance upon it is premature at best. The motion is DENIED.

**BACKGROUND**

The Clarks' home and personal property located at 9168 Piccadilly Circle, Windsor, California, were insured by Nationwide Mutual Insurance Company in October 2019, when the property suffered smoke damage in the Kincaid Fire. *See* Declaration of D. Schaffer ("Schaffer

---

[1] Plaintiffs initially sued AMCO Insurance Company in error.

Decl."), Ex. A [Dkt. No. 45-2] (Homeowner Policy Declarations); Declaration of J. Reynolds ("Reynolds Decl."), Ex. A [Dkt. No. 51-4] (RegasGroup November 22, 2019, Report). The Clarks submitted a claim for the loss caused by the smoke damage. *See* Schaffer Decl., Ex D at 1. In adjusting the claim, Nationwide retained the RegasGroup, an environmental hygienist, to conduct a soot, char, ash, and fire residue inspection. Reynolds Decl. ¶ 5. Its report revealed elevated levels of soot, char, ash, and fire residue in the Clarks' home. *See* Reynolds Decl., Ex. A at 2. Ultimately, Nationwide issued claim payments totaling $176,832.28.[2] Reynolds Decl. ¶ 4.

After the Clarks' vendors completed remediation efforts, the RegasGroup conducted a second inspection. Its report concluded that samples taken from the Clarks' property were below a 3% level for char, soot, and ash. Reynolds Decl., Ex. B (RegasGroup February 10, 2020, Report) at 16. But shortly thereafter, the Clarks retained Air Environmental, an environmental testing vendor, to inspect the Clarks' attic and crawlspace HVAC ducting. Declaration of S. Barrett ("Barrett Decl.") [Dkt. No. 51-2] at 268 (detailing February 20, 2020, Air Environmental Report). Its report, which the Clarks submitted to Nationwide, differed significantly from the RegasGroup report. Reynolds Decl. ¶ 10. It recommended "that the attic HVAC ducting should be replaced [due to] the high amount of ash/dust visible inside the ducting, even after the ducting has been cleaned." Barrett Decl. at 268.

As a result of these differences, Nationwide offered to have RegasGroup conduct additional testing. *See* Reynolds Decl., Ex. C. Mr. Clark refused any additional inspection and notified Nationwide that he would proceed with replacement of the HVAC ducts. *See* Reynolds Decl., Ex. D.

On April 26, 2021, Nationwide informed the Clarks that the information that they had provided raised coverage questions around smoke, soot, and odor damage to their home, HVAC, and personal property. *See* Schaffer Decl., Ex. D at 1 (Apr. 26, 2021, Claim Notification Letter). It also stated that a portion of their claim could be denied based on the "Undetectable Wildfire or

---

[2] These payments included: Coverage A (Dwelling): $48,574.62; Coverage B (Other Structures): $1,194.92; Coverage C (Contents): $38,362.31; Coverage D (ALE): $88,261.56; and Debris Removal – Contents coverage (for food spoilage): $438.87. *See* Reynolds Decl. ¶ 4.

Brushfire Particles" exclusion, Exclusion 14. *Id*. at 3. That exclusion reads:

> 14. Undetectable Wildfire or Brushfire Particles
>
> This means:
> a. Any type of smoke, soot, char, ash, particles, matter, material other byproduct or debris, or odor that is produced, emitted or released during or directly resulting from or following wildfire or brushfire event that is undetectable by unaided human sense. Unaided human senses means without requiring special equipment, including, but not limited to, microscopes or laboratory testing.
> b. This exclusion applies to costs to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, deodorize, or in any way respond to or assess the effect of Undetectable Wildfire or Brushfire Particles. It also applies to costs to neutralize or deodorize odor unless odor is detectable on your "residence premises" more than 30 days following the declaration of full containment of the wildfire or brushfire by a governmental authority.
>
> However, direct physical loss by Wildfire or Brushfire Particles that can be seen solely upon utilization of a chemical sponge or other similar tool designed for detecting such materials are covered.

Schaffer Decl., Ex. F at 3.

On February 16, 2022, the Clarks filed the underlying complaint for breach of contract and breach of covenant of good faith and fair dealing against AMCO Insurance Company related to their insurance claim for damages. *See* Dkt. No. 1 (Complaint).[3] As this litigation has progressed, Nationwide has continued to evaluate the Clarks' claim. It retained Exponent, a technical consulting service, to review the RegasGroup and Air Environmental reports and to conduct an additional inspection. Exponent's November 2022 inspection concluded that fire residue levels were within normal range and that no further professional cleaning was required. Barrett Decl., Ex. A at 152, 159.

In response, the Clarks retained Kaizen Safety Solutions, an environmental hygienist, to conduct site inspections of the Clarks' property on December 11, 2022, and again in March 2023. Reynolds Decl., Ex. N (Kaizen Safety Solutions Report) at 62. In a proof of loss report based on the March 29, 2023, Kaizen Safety Solutions Report, the Clarks submitted a supplemental claim in the amount of $695,763.27. Schaffer Decl., Ex. E (Clark Proof of Loss filed in March 2023).

---

[3] Plaintiffs filed in state court, and defendants removed based on diversity jurisdiction. *See* Dkt. No. 1 (Notice of Removal). The plaintiffs later amended their complaint to correctly name Nationwide Mutual Insurance Company. *See* Dkt. No. 36 (First Amended Complaint).

1    Nationwide then reiterated its offer to have the claim re-evaluated through a local expert
2    and vendor re-inspection. Reynolds Decl., Ex. O at 279. The Clarks rejected that offer.
3    Nationwide again retained Exponent to review the Kaizen Safety Solutions report. Schaffer Decl.,
4    Ex. F at 1. In an October 13, 2023, report, Exponent stated that there were flaws in the Kaizen
5    Safety Solutions report and concluded that there was no additional damage to the Clarks' property.
6    Barrett Decl., Ex. A at 2-9. In light of that report, on November 3, 2023, Nationwide sent a denial
7    letter to the Clarks stating that there was no evidence of wildfire damage remaining despite what
8    the Kaizen Safety Solutions Report had stated. Schaffer Decl., Ex. F at 1. That letter included a
9    reference to Exclusion 14. *Id*. at 3.

10   On April 26, 2024, the Clarks filed their Motion for Partial Summary Judgment, seeking a
11   ruling that Exclusion 14 was invalid and unenforceable, and that Nationwide could not lawfully
12   rely on it. *See* Motion for Partial Summary Judgment ("Mot.") [Dkt. No. 45]. On May 8, 2024,
13   Nationwide sent an update to the Clarks' claim denial, stating that Exclusion 14 was not used to
14   evaluate the Clarks' claim. Barrett Decl., Ex. C at 356.

## LEGAL STANDARD

16   Summary judgment on a claim or defense is appropriate "if the movant shows that there is
17   no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
18   law." Fed. R. Civ. Proc. 56(a). In order to prevail, a party moving for summary judgment must
19   show the absence of a genuine issue of material fact with respect to an essential element of the
20   non-moving party's claim, or to a defense on which the non-moving party will bear the burden of
21   persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has
22   made this showing, the burden then shifts to the party opposing summary judgment to identify
23   "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary
24   judgment must then present affirmative evidence from which a jury could return a verdict in that
25   party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

26   On summary judgment, the Court draws all reasonable factual inferences in favor of the
27   non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility
28   determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

4

facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

The plaintiffs seek an order granting partial summary judgment that (1) the "Undetectable Wildfire or Brushfire Particles" exclusion and limitation in the insurance policy covering their home and its contents is invalid and unenforceable, and (2) to the extent that Nationwide relied upon the application of the same policy exclusion, it was not entitled to deny the plaintiffs' claim on or about November 3, 2023. However, it is not clear from the record whether Nationwide relied at all on Exclusion 14 when denying the Clarks' request for additional payments. Genuine disputes on this material fact preclude summary judgment. Furthermore, no court has addressed the validity or enforceability of Exclusion 14. Nationwide says that it did not apply Exclusion 14, and since there are at least material disputes of fact pertaining to its reliance on Exclusion 14, any ruling now on the exclusion's validity or enforceability would be premature and amount to an advisory opinion, which I will not provide.

A genuine issue of fact is one that could reasonably be resolved in favor of either party and a dispute is material if it could affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Both factors are met here.

Here's the dispute. The Clarks point to the mention of the exclusion in at least two communications from Nationwide regarding their claim, which they assert shows that it relied on the exclusion to deny the claim. In a letter sent to the Clarks on April 26, 2021, Nationwide acknowledged receipt of the Clarks' claim and stated that information provided by the Clarks created coverage questions surrounding "[a]dditional smoke, soot, and odor damage" to HVAC ductwork and personal property. *See* Schaffer Decl., Ex. D at 1. Immediately following the "Claim details" section, Nationwide referenced Exclusion 14.[4] *Id.* at 1–2. The letter continued, "we believe your Homeowners coverage may not apply to this loss because your policy

---

[4] This letter omits the last paragraph of Exclusion 14 and does not reference the exclusion in its entirety.

1  specifically excludes undetectable wildfire or Brushfire Particles." *Id*. at 3.  Then, in its
2  November 3, 2023, partial denial of coverage letter, Nationwide stated: "We must respectfully
3  advise you that your policy does not provide coverage for a portion of this loss – as further
4  detailed below."  Schaffer Decl., Ex. F at 1.  That "further detail[] below" included a reference to
5  Exclusion 14, as noted in the "Policy Details" section of the partial denial of coverage letter.  *Id*. at
6  3.  Reference to Exclusion 14, particularly following language that raised coverage questions and
7  stated that the Clarks' policy does not include coverage for their claim, allows for an inference that
8  Nationwide relied at least in part on the exclusion to deny coverage.

9  Nationwide argues to the contrary that the mere mention of Exclusion 14 in the denial
10 letters does not show that it relied on the exclusion to make decisions regarding the Clarks' claim.
11 It says that the letters and environmental reports from multiple vendors finding no existing
12 damage to the Clarks' property support its position that its denial of coverage had nothing to do
13 with Exclusion 14.  While the April 26, 2021, letter stated Nationwide's belief that the Clarks'
14 claim may be subject to Exclusion 14, it also indicated that Nationwide continued to investigate
15 the claim.  It included, "[t]o further evaluate your loss, we have retained the expert service of the
16 RegasGroup and Service Master" and advised the Clarks to call their insurance adjuster to
17 schedule a reinspection.  *See* Schaffer Decl., Ex. D at 3.

18 The November 3, 2023, letter, which provides Nationwide's conclusion on the evidence to
19 date, states in relevant part:

20 > *Our review showed that there is no evidence of any remaining resulting damage from the wildfire*.  We have reviewed your expert finding and had it evaluated by Exponent.  Based on our expert's evaluation of the Kaizen report, they concluded the following findings:
>
> "We have reviewed the Kaizen report, and none of the information provided by Kaizen changes Exponent's opinions related to the Subject Property.  The Kaizen report is filled with false and misleading statements that illustrate their inexperience and lack of scientific acumen and understanding of settled wildfire particulate assessments and analysis methods.  There are serious inconsistencies and major uncertainties among the inspection and subsequent conclusions reached by Kaizen."

Schaffer Decl., Ex. F at 1 (emphasis added).  This conclusion does not mention Exclusion 14 as a

reason for the denial; it relies on Nationwide's experts' opinions and assessments of the condition of the Clarks' property. To emphasize the point, on May 8, 2024, Nationwide stated that it "has never used Exclusion 14 . . . to guide the investigation of your claim or to decline any payment on your claim." Reynolds Decl., Ex. C (Update to Partial Denial of Coverage Letter).

There is indisputably a dispute over whether Nationwide relied on Exclusion 14 to deny the Clarks' supplemental claim. The Clarks assert that the dispute itself supports their malice claims. *See* Reply 10. If Nationwide does not rely on Exclusion 14 at trial as a basis for its decision (and it has stated it will not, *see* Oppo. 14, n.41), it is unclear how the issue will arise. And if the jury concludes that the Clarks suffered no damage in any event, the legality of Exclusion 14 would be irrelevant. Regardless, whether Nationwide relied on Exclusion 14 to deny the Clarks' claim constitutes a dispute over a genuine issue of fact that is apparently material to the Clarks' theory of the case, and resolution of that dispute would be a predicate to a determination of whether it would be legal for Nationwide to rely on the exclusion. Accordingly, I must deny the Clarks' motion for partial summary judgment on this issue.

## CONCLUSION

Genuine issues of material fact exist concerning whether Nationwide relied on Exclusion 14 to deny the Clarks' insurance claim. Their motion for partial summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: August 7, 2024



William H. Orrick
United States District Judge